◼ DONNA THURMAN, as Administrator of the Estate of PAUL L. THURMAN, Deceased, Respondent, v UNITED HEALTH SERVICES HOSPITALS, INC., Appellant. [833 NYS2d 702]—

Spain, J. Appeal from an order of the Supreme Court (Lebous, J.), entered July 14, 2006 in Broome County, which denied defendant's motion for summary judgment dismissing the complaint.

Plaintiff, the wife of decedent Paul L. Thurman and administrator of his estate, commenced this action contending that defendant, a not-for-profit hospital, was vicariously liable for the negligence of Thomas Ralston, a radiologist. Plaintiff alleges that Ralston failed to accurately interpret and report on a CAT scan performed on decedent while a patient at defendant's facility. Since it was established that Ralston was not an employee of defendant, the dispositive issue on defendant's summary judgment motion seeking dismissal of plaintiff's first claim is whether there was sufficient evidence, viewed most favorably to plaintiff, upon which defendant could be held vicariously liable

for Ralston's allegedly negligent actions. Because we conclude that defendant is entitled to summary judgment dismissing that claim, we modify the order in this respect.

When decedent experienced pancreatitis in March 2001, his primary care physician referred him to Ali Marhaba, a gastroenterologist, who diagnosed a pancreatic tumor. Marhaba referred him to a pancreatic surgeon at Johns Hopkins University Hospital who performed a surgical procedure on April 23, 2001 in which a benign tumor was removed from decedent's pancreas. He was discharged about one week later.

On May 24, 2001, decedent went to defendant's emergency room with severe abdominal pain and symptoms of blood loss. Marhaba admitted decedent into defendant's intensive care unit and undertook his care over the next week, ordering and, in some cases, performing various diagnostic tests to determine the source of suspected internal bleeding, as well as performing blood transfusions and administering medication. Marhaba also ordered a CAT scan to rule out or detect other undiscovered sources of abdominal bleeding and to determine the need for more invasive diagnostic procedures.

The CAT scan results were reviewed and interpreted by Ralston, the "on call" radiologist who was not known to decedent or Marhaba nor was he requested by them. Ralston was not employed by defendant but, rather, by an independent group of radiologists that had an exclusive contract to provide such services at defendant's hospital, a fact known at the time by Marhaba. Ralston's report indicated that there were no significant abnormalities other than normal postoperative swelling and other changes. As test results showed no other source of bleeding and no rebleeding was detected, decedent was discharged on June 1, 2001. The next evening, decedent was taken to defendant's emergency room suffering from severe abdominal bleeding; tragically, vascular surgeons could not stem the bleeding from an undiagnosed pseudoaneurysm and arterial fistula, and he died of massive blood loss during the surgery.

Under settled principles, a hospital ordinarily may not be held vicariously liable for the negligent acts of a treating physician who is not an employee of the hospital but, rather, part of a group of independent contractor physicians (see Hill v St. Clare's Hosp., 67 NY2d 72, 79 [1986]; King v Mitchell, 31 AD3d 958, 959 [2006]). Imposition of such vicarious liability for the malpractice of an independent contractor physician under an ostensible or apparent agency theory may be imposed only where there were " 'words or conduct of the principal, communicated to a third party, that give rise to the appearance and

belief that the agent possesses authority' to act on behalf of the principal" (*Searle v Cayuga Med. Ctr. at Ithaca*, 28 AD3d 834, 836 [2006, as amended by unpublished order entered July 20, 2006], quoting *Hallock v State of New York*, 64 NY2d 224, 231 [1984]; *see N.X. v Cabrini Med. Ctr.*, 97 NY2d 247, 252 n 3 [2002]; *King v Mitchell, supra* at 959; *Torns v Samaritan Hosp.*, 305 AD2d 965, 966-967 [2003]).

Plaintiff's reliance on the fact that decedent was never informed that Ralston was not a hospital employee is inadequate, as defendant was not "obligated to affirmatively disclaim [Ralston] as an employee in order to avoid the creation of ostensible agency" (*King v Mitchell, supra* at 960). Neither are Ralston's affiliation with defendant, his presence at defendant's facility or his assumption of the role of reading and interpreting decedent's CAT scan sufficient to impute his negligence to defendant (*see Hill v St. Clare's Hosp., supra* at 79; *King v Mitchell, supra* at 960; *Nagengast v Samaritan Hosp.*, 211 AD2d 878, 879 [1995]). Further, Ralston's use—for the CAT scan report—of defendant's stationery containing its logo "without more, is insufficient to satisfy the holding out portion of the test" (*King v Mitchell, supra* at 960; *Nagengast v Samaritan Hosp., supra* at 879), and plaintiff's reference to the content of defendant's Web site is unavailing in the absence of even an allegation that plaintiff or decedent accessed it or relied upon it (*see King v Mitchell, supra* at 959-960; *see also N.X. v Cabrini Med. Ctr., supra* at 252 n 3). The record is bereft of any evidence showing that defendant made representations—or engaged in any misleading conduct—that Ralston was its employee or agent and that decedent submitted himself to Ralston's care by reason of such representations or conduct (*see Nagengast v Samaritan Hosp., supra* at 880).

Likewise inapposite are cases recognizing that hospitals may be held vicariously liable for the acts of independent physicians where the patient entered the hospital through an emergency room and sought treatment from the hospital and not a particular physician (*see Salvatore v Winthrop Univ. Med. Ctr.*, 36 AD3d 887, 888 [2007]; *Monostori v Murphy*, 34 AD3d 882, 883-884 [2006]; *Johnson v Jamaica Hosp. Med. Ctr.*, 21 AD3d 881, 883 [2005]; *Torns v Samaritan Hosp., supra* at 967; *Citron v Northern Dutchess Hosp.*, 198 AD2d 618, 620 [1993], *lv denied* 83 NY2d 753 [1994]; *see also McDonald v Ambassador Constr. Co.*, 273 AD2d 108, 109 [2000]; *Abraham v Dulit*, 255 AD2d 345 [1998]; *Ryan v New York City Health & Hosps. Corp.*, 220 AD2d 734, 736 [1995]). Here, while decedent presented to the emergency room, his care was almost immediately assumed by

Marhaba, his treating gastroenterologist, who admitted him into the intensive care unit and either performed or ordered numerous diagnostic tests during decedent's admission over the next week. Indeed, plaintiff's affidavit reflects that decedent either requested or consented to Marhaba being called in to oversee his care.* Under these circumstances, decedent could not have reasonably believed that he was receiving medical care from the hospital in general rather than from a particular physician (see Christopherson v Queens-Long Is. Med. Group, P.C., 17 AD3d 393, 394 [2005]; Ventura v Beth Israel Med. Ctr., 297 AD2d 801, 802-803 [2002], lv denied 99 NY2d 510 [2003]). That is, defendant did not, through its operation of its emergency room, maintain control over the manner and means of Marhaba's treatment of decedent during which he ordered the CAT scan, and Ralston's interpretation and reporting on it did not occur in the emergency room setting or as part of the hospital's care (see Payant v Imobersteg, 256 AD2d 702, 704 [1998]; Nagengast v Samaritan Hosp., supra at 879). Thus, since decedent obtained treatment—in the emergency room and while admitted—from his independent treating physician, during which Ralston's alleged negligence occurred, the emergency room setting line of cases—in which patients seek and receive treatment from the hospital—is inapplicable (see King v Mitchell, 31 AD3d 958, 960-961 [2006], supra; Christopherson v Queens-Long Is. Med. Group, P.C., supra at 394; Ventura v Beth Israel Med. Ctr., supra at 802-803; Nagengast v Samaritan Hosp., supra at 879-880).

In view of the foregoing, defendant was entitled to partial summary judgment dismissing plaintiff's first cause of action in the amended complaint. By failing to address the issue in its brief, defendant has abandoned any claim that it was entitled to summary judgment dismissing plaintiff's second cause of action for negligent hiring (see Banker v Hoehn, 278 AD2d 720, 722-723 [2000]).

Cardona, P.J., Peters, Carpinello and Kane, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendant's motion for summary judgment dismissing the vicarious liability cause of action; motion granted to that extent and said cause of action dismissed; and, as so modified, affirmed.

---

* After plaintiff commenced this action, it was discontinued as against Marhaba based upon a lack of negligence on his part.